IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Hawaii Structural Ironworkers Pension Trust Fund, Derivatively on Behalf of Alcoa, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 08-0614 |
| vs. | ) ) | |
| Alain J.P. Belda, et al., | ) ) | |
| Defendants. | ) | |

AMBROSE, Chief District Judge

**SYNOPSIS**

This shareholder derivative action, commenced by plaintiff Hawaii Structural Ironworkers Pension Trust Fund ("Plaintiff") derivatively on behalf of Alcoa, Inc. ("Alcoa"), involves allegations of bribery and violations of the Foreign Corrupt Practices Act on the part of Defendants. Defendants Alain J.P. Belda, Kathryn S. Fuller, Carlos Ghosn, Joseph T. Gorman, Judith M. Geuron, Klaus Kleinfeld, Michael G. Morris, E. Stanley O'Neal, James W. Owens, Henry B. Schacht, Ratan N. Tata, Franklin A. Thomas and Ernesto Zedillo (collectively, the "Director Defendants"), along with Defendants Lawrence R. Purtell and Bernt Reitan, have moved to dismiss the complaint [Docket No. 47] for lack of standing due to Plaintiff's failure to make a pre-suit demand on Alcoa's Board of Directors, and for failure to state a claim. For the reasons set forth below, I grant Defendants' motion to dismiss.

1

**OPINION**

**I. Background**

On February 27, 2008, a civil RICO action was filed in this Court under the caption

*Aluminum Bahrain B.S.C. v. Alcoa, Inc., Alcoa World Alumina LLC, William Rice and Victor*

*Dahdaleh*, No. 2:08-cv-0029 (the "Alba Action"). The Alba Action alleged that Alcoa, an

affiliate and certain individuals engaged in fraud and bribery of foreign officials over a period of

fifteen years and sought one billion dollars in damages. On March 20, 2008, the Department of

Justice ("DOJ") moved to intervene and stay discovery in the Alba Action, to prevent

interference with its own criminal investigation. By March 22, 2008, it was "widely reported" in

the news media that Alcoa was under investigation by the DOJ over the accusations that the

company bribed officials in Bahrain in connection with its business dealings. (Complaint, ¶ 13.)[1]

On March 27, 2008, I granted the DOJ's motion and stayed indefinitely all discovery in the Alba

Action.

The Complaint in this shareholder derivative action was filed on May 6, 2008, along with

a motion for a temporary restraining order and preliminary injunction. The Complaint asserts

claims for breach of fiduciary duty, abuse of control, corporate waste, unjust enrichment and

gross mismanagement, alleging that the Defendants, consisting of the entire Alcoa Board of

Directors as well as certain senior executives and agents, breached their fiduciary duties to Alcoa

by participating in and/or failing to prevent the misconduct alleged in the Alba Action. All of the

claims are derivative in nature. In connection with its action, Plaintiff also sought a TRO and

---

[1]A copy of the Complaint is annexed to the Declaration of Kevin J. Orsini as Ex. A
[Docket No. 48-3.]

preliminary injunction enjoining any Alcoa Directors or officers identified as subjects or targets of the DOJ investigation from participating in Board decisions relating to Alcoa's response to the investigation and any criminal charges ensuing therefrom.

It is undisputed that Plaintiff did not make a demand on Alcoa's Board of Directors (the "Board") prior to commencing this action on May 6, 2008. In its Complaint, Plaintiff alleges that "[p]resuit demand on the Alcoa Board of Directors to bring the derivative claims asserted herein is excused because Alcoa and its shareholders will suffer irreparable injury if demand were required to be made upon the Alcoa Board of Directors and plaintiff is required to sit by idly while the defendants named herein abuse their positions of trust and control at Alcoa to compromise Alcoa's interests in favor of their own." (Complaint, at ¶ 135.) After outlining the allegations against Alcoa in the Alba Action and the resultant DOJ investigation, Plaintiff alleges that "without this Court's intervention - the fox will be left in charge of the henhouse." (Id.) Plaintiff further asserts that its "ability to seek injunctive relief on Alcoa's behalf to recover and/or enjoin the dissipation of illegal profits and unjust enrichment would be unduly stymied if plaintiff were required to await the Alcoa Board's reconsideration of the public position it has already taken in defending itself and denying any misconduct occurred." (Id.) Finally, Plaintiff alleges that "the entire Alcoa Board is incapable of exercising valid business judgment, as of the filing of this suit, as to investigate and/or prosecute these claims would expose (or increase the exposure of) each Board member to criminal and/or civil liability for the misconduct alleged herein." (Id. at ¶ 136(b).)[2]

---

[2]The remainder of paragraph 136 of the Complaint sets forth the various purported ways in which the Director Defendants' self-interest would prevent the Board from agreeing to pursue this action.

By letter of counsel dated May 7, 2008, Plaintiff notified Alcoa's Board that it had filed a shareholder derivative complaint and provided the Board with a copy of the Complaint. [Docket No. 48-6, at 2.] Plaintiff further stated that "[t]his letter also serves as a formal demand that the Alcoa Board of Directors immediately investigate and commence legal action for remedial and other relief against [the Defendants] for breach of fiduciary duty, abuse of control, gross mismanagement, corporate waste, and unjust enrichment, as alleged in the attached Complaint." [Id.]

By letter of counsel dated May 19, 2008, the Board responded to Plaintiff's demand. [Docket No. 48-7, at 2.]

> Second, with respect to the section of your letter titled "Demand on Alcoa Board to Commence Litigation" - which you sent the day after you filed your derivative action - as you know (and your complaint alleges) Alba filed a complaint in federal court in the Western District of Pennsylvania alleging that Alcoa (and others) committed fraud and violated the Federal RICO statute in connection with an alleged bribery scheme. You are likewise aware (and allege in your complaint) that the Department of Justice ("DOJ") has opened a criminal investigation into the allegations set forth in the Alba complaint and sought a stay of discovery in that action. In response, Judge Ambrose has administratively closed the Alba litigation pending the resolution of the DOJ's criminal investigation. You may not be aware, however, that : (1) Alcoa is cooperating with the DOJ; (2) Alcoa has established a special committee (comprised of independent Alcoa directors Henry Schacht and Franklin Thomas) to oversee an investigation into the Alba allegations; (3) the special committee has retained Baker & McKenzie to conduct that independent investigation into the allegations in Alba's complaint; and (4) Baker & McKenzie is coordinating its investigation with the DOJ's investigation.

> In light of the above, the Board, through the special committee, has already commenced an independent investigation into the allegations stated in the Alba complaint, which are repeated in the derivative complaint that you have filed. To the extent that your letter requests commencement of a second investigation into those allegations, the Board has considered your demand and, because an investigation has already been commenced, has determined that it would not be in the best interests of Alcoa for the Board to commence another

investigation into the Alba allegations at this time.  Needless to say, the Board will be kept apprised of developments in the DOJ and Baker & McKenzie investigations and will reassess this decision as appropriate.  The Board has also considered your demand to commence litigation and has determined that it would not be in the best interest of Alcoa to commence litigation at this time.

Let me make an additional point with respect to your demand.  It would appear that you believe that pre-suit demand is excused under Cucker v. Mikalauskas (sic), 547 Pa. 600, 692 A.2d 1042 91997), but neither your letter nor the complaint you filed set forth facts that would excuse pre-suit demand.

[Id. at 2-3.]

On May 21, 2008, I held an argument, via telephone, in connection with Plaintiff's

motion for a TRO.  During the argument, Adam Safwat, an assistant U.S. Attorney with the DOJ,

informed the Court that the DOJ as of that time had *not* informed Alcoa that any of its officers or

directors were considered either targets or were subjects with respect to its criminal investigation.

By order dated May 27, 2008, I denied Plaintiff's motion for a TRO on the grounds that Plaintiff

had failed to establish irreparable harm.   I further set a briefing schedule for Defendants'

anticipated motion to dismiss and for responses to the motion for a preliminary injunction.  A

preliminary injunction hearing was set for July 8, 2008, and later rescheduled for July 21, 2008.

## II.  Legal Analysis

### A.  Standard Of Review

In deciding a motion to dismiss under Fed R. Civ. P. 12(b)(6), all factual allegations, and

all reasonable inferences therefrom, must be accepted as true and viewed in a light most

favorable to the plaintiff.  Haspel v. State Farm Mut. Auto. Ins. Co., 2007 WL 2030272, at *1 (3d

Cir. July 16, 2007).  "The issue is not whether the plaintiff will prevail at the end but only

whether he should be entitled to offer evidence to support his claim."  Williams v. Sebek, 2007

WL 790386, at *1 (W.D. Pa. Mar. 14, 2007) (citing <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989)).

A shareholder derivative action implicates a heightened pleading standard.  Federal Rule

of Procedure 23.1 governs derivative actions and provides, in relevant part, that:

> (b) Pleading Requirements.  The complaint must be verified and must. . .
>
> (3) state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1 (West 2008).

## B.  Defendants' Motion To Dismiss

### 1.  The Demand Requirement

"The derivative form of action permits an individual shareholder to bring suit to enforce a

*corporate* cause of action against officers, directors, and third parties."  <u>Kamen v. Kemper Fin.</u>

<u>Svs., Inc.</u>, 500 U.S. 90, 95 (1991) (emphasis in original).  "Devised as a suit in equity, the

purpose of the derivative action was to place in the hands of the individual shareholder a means

to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless

directors and managers.'" <u>Id.</u> (quoting <u>Cohen v. Beneficial Loan Corp.</u>, 337 U.S. 541, 548

(1949)).  "To prevent abuse of this remedy, however, equity courts established as a precondition

'for the suit' that the shareholder demonstrate 'that the corporation itself had refused to proceed

after suitable demand, unless excused by extraordinary circumstances.'" <u>Id.</u> (quoting <u>Ross v.</u>

<u>Bernhard</u>, 396 U.S. 531, 534 (1970)).  "This requirement is accommodated by Federal Rule of

Civil Procedure 23.1." <u>Id.</u>

As the Supreme Court has further explained: "The purpose of the demand requirement is

to 'afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'" Id. at 96 (quoting Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 533 (1984)). "Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate suit on behalf of his corporation in disregard of the directors' wishes." Id. (citations omitted.) "In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'" Id.

### 2. Pennsylvania's Demand-Excused Requirement

Whether a shareholder has demonstrated its entitlement to bring suit on behalf of a corporation is determined by reference to the law of the corporation's state of incorporation. Garber v. Lego, 11 F.3d 1197, 1202 (3d Cir. 1993). Alcoa is incorporated in the state of Pennsylvania (Complaint, ¶ 27), and accordingly, Pennsylvania law determines whether Plaintiff may bring an action on its behalf. Pennsylvania state courts and the Third Circuit, applying Pennsylvania law, have recognized the circumscribed nature of a shareholder's right to initiate an action on behalf of a corporation. See, e.g., Garber, 11 F.3d at 1202 ("The right of an individual shareholder to act for the corporation is exceptional, and only arises on a clear showing of special circumstances, among which inability or unwillingness of the corporation itself, demand upon the regular corporate management, and refusal to act, are imperative requisites.") (quoting Wolf v. Pennsylvania R. Co., 45 A. 936 (Pa. 1900)); see also, Drain v. Covenant Life Ins. Co., 712 A.2d 273, 279 (Pa. 1998) (quoting Garber, *supra*).

Prior to 1997, Pennsylvania permitted a shareholder to commence a derivative action

without first making a demand upon a corporation's board of directors where the plaintiff alleged

that a majority of the board of directors engaged in fraudulent acts, such that demand on the

board would be futile.  See Drain, 712 A.2d at 581 (permitting shareholder who filed suit prior to

1997 to amend complaint to allege demand futility); Wilson v. Brown, 112 A. 1, 2 (Pa. 1920)

("Where it appears that fraudulent acts prejudicial to the interests of the corporation have been

committed, so interwoven with the conduct of the corporate managers and of such a nature that it

might be presumed the officers would commit a breach of trust in refusing to proceed, a demand

is not necessary, as it would be vain and useless."); Garber, 11 F.3d at 1203 ("in order to excuse

demand under Pennsylvania law, the plaintiff must allege that a majority of the board of directors

engaged in acts that are fraudulent; not that they merely exercised erroneous business

judgment").  However, this rule was abrogated by the Pennsylvania Supreme Court's decision in

Cuker v. Mikalauskas, 692 A.2d 1042 (Pa. 1997).

In Cuker, the Pennsylvania Supreme Court reiterated that the "business judgment rule"

was the law in Pennsylvania:

> In summary, the business judgment rule reflects a policy of judicial
> noninterference with business decisions of corporate managers, presuming that
> they pursue the best interests of their corporations, insulating such managers from
> second-guessing or liability for their business decisions in the absence of fraud or
> self-dealing or other misconduct or malfeasance.

692 A.2d at 1046-47.  It further explained that

> "[d]ecisions regarding litigation by or on behalf of a corporation, including
> shareholder derivative actions, are business decisions as much as any other
> financial decisions.  As such, they are within the province of the board of
> directors.  Such business decisions of a board of directors are, unless taken in
> violation of a common law or statutory duty, within the scope of the business
> judgment rule.

Id. at 1047 (citations omitted.)  In furtherance of these principles, and to assist trial courts in their application, the Pennsylvania Supreme Court adopted certain provisions of 2 ALI, *Principles of Corporate Governance: Analysis and Recommendations* (1994), specifically sections 7.02 (standing), 7.03 (the demand requirement), 7.04 (procedure in derivative action), 7.05 (board authority in derivative action), 7.06 (judicial stay of derivative action), 7.07, 7.08, and 7.09 (dismissal of derivative actions), 7.10 (standard of judicial review), and 7.13 (judicial procedures).

Section 7.03 of the ALI Principles provides:

§ 7.03 Exhaustion of Intracorporate Remedies: The Demand Rule

(a) Before commencing a derivative action, a holder or a director should be required to make a written demand upon the board of directors of the corporation, requesting it to prosecute the action or take suitable corrective measures, unless demand is excused under § 7.03(b).  The demand should give notice to the board, with reasonable specificity, of the essential facts relied upon to support each of the claims made therein.

(b) Demand on the board should be excused only if the plaintiff makes a specific showing that irreparable injury to the corporation would otherwise result, and in such instances demand should be made promptly after commencement of the action.

(c) Demand on shareholders should not be required.

(d) Except as provided in § 7.03(b), the court should dismiss a derivative action that is commenced prior to the response of the board or a committee thereof to the demand required by § 7.03(a), unless the board or committee fails to respond within a reasonable time.

Accordingly, under the ALI Principles as adopted by the Pennsylvania Supreme Court, a shareholder who commences an action on behalf of a corporation without first making a demand on the corporation's board of directors must demonstrate that irreparable harm to the corporation

would have resulted from making such a demand. The Pennsylvania Supreme Court

subsequently explained that, while "*Cuker* does not specifically address the purpose of the new

demand requirement, . . .demand requirements are imperative because the shareholder's right to

act for the corporation is exceptional and only arises on a clear showing of special circumstances.

The new, arguably more stringent demand requirement furthers this principle." Drain, 712 A.2d

at 279 (citing Garber, 11 F.3d at 1202); see also, Levin v. Schiffman, 2001 WL 1807922, at *6

(Pa. Com. Pl. Feb. 1, 2001) (noting that the Pennsylvania Supreme Court in Cuker 'did not

recognize the 'futility' exception).

### 3. Application Of The Irreparable Harm Standard.

As previously discussed, it is undisputed that Plaintiff did not make a demand on Alcoa's

Board prior to commencing this action. Instead, Plaintiff argues that Alcoa would have suffered

irreparable harm through the delay inherent in making such a demand, during which the

interested Defendants would have had the opportunity to compromise Alcoa's rights in favor of

their own in connection with the DOJ investigation. (Complaint, ¶ 135.) I have reviewed the

limited case law applying Pennsylvania's irreparable harm standard to shareholder derivative

actions, and find that Plaintiff has not met its burden of establishing irreparable harm.

In Warden v. McLelland, 288 F.3d 105 (3d Cir. 2002), the plaintiffs/appellants were

shareholders of a pharmaceutical company, BPSI, of which the defendants/respondents were the

only other shareholders, as well as the entities accused of wrongdoing. The defendants had

previously threatened the plaintiffs that "we are prepared to start a process that will result in our

ownership of 100% of BPSI at a price to be determined by us and our financial advisor." 288

F.3d at 109. The plaintiffs thereafter commenced a shareholder derivative action against the

defendants without first making a demand on BPSI's board of directors. Id. at 110. A week after the defendants were served with the complaint, BPSI's board of directors approved a "squeeze out" merger eliminating the plaintiffs' ownership interest. Id.

Applying section 7.03's irreparable harm requirement, the Third Circuit reversed the district court's decision and held that the plaintiffs had standing to pursue their derivative claims despite failing to make a demand. Id. Noting that, in order to maintain standing a plaintiff must be a shareholder both at the time of the alleged wrongdoing and continuing to judgment, unless its change in status is the result of corporate action in which the shareholder did not acquiesce, and further noting the rapidity with which the plaintiffs were squeezed out once the defendants received notice of the action, the court held that BPSI would have suffered irreparable harm if the plaintiffs had been required to make a demand prior to commencing the action. "Because only those responsible for the corporation's alleged losses remained as shareholders following the elimination of the [plaintiffs] as shareholder, the 'squeeze out' would have effectively defeated the action, depriving the corporation of any possibility of recovering the losses. The immediate elimination of the David Berwind Trust's interest in BPSI, in other words, may have irreparably damaged BPSI just as it would have irreparably harmed the trust." Id. at 111. Thus, the Third Circuit has held that the irreparable harm standard is met where the requirement of prior demand would result in complete foreclosure of any subsequent shareholder derivative action. See also, Liss v. Liss, 2002 WL 576510, at *10 (Pa. Com. Pl. Mar. 22, 2002) (demand excused under irreparable harm standard where defendants had forced the corporation into liquidation and were operating another corporation in its stead).

Outside the context of shareholder derivative actions, irreparable harm has been defined

by courts in this Circuit for purposes of injunctive relief as "an injury that 'cannot be redressed by a legal or equitable remedy following a trial.'" Tillery v. Leonard & Sciolla, LLP, 437 F. Supp.2d 312, 329 (E.D. Pa. 2006) (quoting Instant Air Freight Co. v. C.F. Air Freight, 882 F.2d 797, 801 (3d Cir. 1989)). "An irreparable injury is one that 'is not remote or speculative, but actual and imminent and for which monetary damages cannot adequately compensate.'" Tillery, 437 F. Supp.2d at 329 (quoting FMC Corp. v. Control Solutions, Inc., 369 F. Supp.2d 539, 573 (E.D. Pa. 2005)). Pennsylvania courts and federal courts applying Pennsylvania law have found irreparable harm to a corporation where a corporation faced a threat of injury to its market share, loss of business opportunities or goodwill. See, e.g., The York Group, Inc. v. Yorktowne Caskets, Inc., 924 A.2d 1234, 1243 (Pa. Super. 2007) (granting preliminary injunction where corporate plaintiff would suffer irreparable harm in the form of loss of market share and business opportunities); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 595 (3d Cir. 2000) (loss of market share constitutes irreparable harm).

Here, the irreparable harm claimed by Plaintiff, that Alcoa's interests would be compromised in favor of the Defendants, does not meet either of these standards.[3] By contrast to the irreparable harm found in Warden and Liss, *supra*, Alcoa does not face imminent liquidation, nor would a prior demand have threatened Plaintiff's standing to subsequently bring this action. Moreover, Plaintiff waited more than two months after the first allegations arose in connection

---

[3] A Massachusetts court, applying Pennsylvania law, applied the preliminary injunction definition of irreparable harm in the shareholder demand-excused context. See Bennett v. Pops, 2007 WL 2372116, at *1 (Mass. Super. July 10, 2007). I found no Pennsylvania state or federal cases indicating that the standards are exactly the same, although I believe they would be co-extensive.

with the Alba Action, and over five weeks from the DOJ's intervention, before commencing this action. This delay, in and of itself, obviates Plaintiff's claim of irreparable harm. See Sekuk Global Enter. Profit Sharing Plan v. Kevenides, 2004 WL 1982508, at *4 (Md. Cir. Ct. May 25, 2004) (no threat of irreparable harm excuses demand where the plaintiffs waited over five weeks from the closing and over four weeks after another shareholder filed a similar virtually identical derivative action before commencing their own derivative action). Finally, any injury to Alcoa would likely result from the allegations already made public in the Alba Action and by the DOJ, not from any delay caused by a pre-suit demand.

Plaintiff also expressed the concern that, had it made a demand, it would have had to wait indefinitely while Alcoa pretended to consider the demand, while the Defendants would have been secretly negotiating with the DOJ for their own benefit. (Pl. Br. at 13.) This argument is not only completely speculative, but incorrect. ALI Principles section 7.03(d) requires the Board to respond within a reasonable time. Plaintiff could have served a demand on Alcoa's Board at any time after the Alba Action was filed, getting a two-month jump on the Board's investigation.[4] Having made a demand, Plaintiff then would have had standing to commence an action and argue that the Board's delay was unreasonable or that its rejection violated the business judgment rule. Instead, Plaintiff unwisely opted to rely on Pennsylvania's very narrow exception to the demand requirement, irreparable harm to the corporation.

Finally, Plaintiff's purported need for injunctive relief does not rehabilitate an action

---

[4] As the ALI noted in its comments to section 7.03 of the Principles of Corporate Governance, *supra*, "making a demand on the board is a relatively costless step, imposing this requirement places little burden on the plaintiff." Werbowsky v. Collomb, 766 A.2d 123, 141 (Md. 2001)

commenced in violation of the pre-suit demand requirement. As the Third Circuit has explained: "If a procedural defect would require dismissal of the suit, the merits are irrelevant, and the court has no power to issue any relief, preliminary or otherwise." U.S. v. Local 560 (I.B.T.), 974 F.2d 315, 330 (3d Cir. 1992); see also, Hill v. Smith, 2005 WL 2666597, at *4 (M.D. Pa. Oct. 19, 2005) (dismissing complaint and motion for a preliminary injunction for failure to exhaust administrative remedies prior to commencing action).

### 4. Plaintiff's Remaining Arguments

The vast majority of Plaintiff's opposition to the motion to dismiss discusses allegations as to whether Alcoa's Board, the Special Committee appointed by the Board, and its counsel, are sufficiently independent to properly evaluate a demand. (See Pl. Opp. Br. at 10-19.) In the context of Defendants' motion to dismiss for failure to make a pre-suit demand, this discussion is wholly irrelevant. I reiterate: had Plaintiff made a demand on the Board back in late March or April, it may now have been in a position to raise these arguments. However, having chosen not to make a demand, Plaintiff must lie in the bed that it has made.

*   *   *

Because the issue of Plaintiff's failure to make a pre-suit demand is dispositive of Defendants' motion to dismiss, I need not address Defendants' remaining arguments that Plaintiff has failed to state a claim upon which relief may be granted.

Accordingly, I grant Defendants' motion to dismiss the Complaint. Since the Complaint has been dismissed, Plaintiff's motion for a preliminary injunction is denied.

## ORDER OF COURT

Having carefully considered Defendants' motion to dismiss [Docket No. 47] and

Plaintiff's opposition thereto, it is hereby ORDERED that

(1) Defendants' motion to dismiss is GRANTED; and it is further ORDERED that

(2) Plaintiff's motion for a preliminary injunction [Docket No. 7] is DENIED; and it is

further ORDERED that

(3) the hearing on Plaintiff's motion for a preliminary injunction, scheduled for July 21,

2008 at 9:30 a.m., is CANCELLED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge